IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Luis Endara, | ) | Civil Action No. 3:05-2691-MBS-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| New Life Fitness World of South | ) | |
| Carolina, Lexington, Inc., New Life | ) | |
| Fitness World of South Carolina South, | ) | |
| Ins., New Life Fitness World of South | ) | |
| Carolina Northeast, Inc., New Life Fitness | ) | |
| World of South Carolina North, Inc., New | ) | |
| Life Fitness World of South Carolina, Inc., | ) | |
| Jung's Tae Kwon Do Academy, New Life | ) | |
| Fitness World, Inc., Jea Jung, and Woo | ) | |
| Jin Jung, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| Ramona Endara, | ) | Civil Action No. 3:05-2692-MBS-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| New Life Fitness World of South | ) | |
| Carolina, Lexington, Inc., New Life | ) | |
| Fitness World of South Carolina South, | ) | |
| Ins., New Life Fitness World of South | ) | |
| Carolina Northeast, Inc., New Life Fitness | ) | |
| World of South Carolina North, Inc., New | ) | |
| Life Fitness World of South Carolina, Inc., | ) | |
| Jung's Tae Kwon Do Academy, New Life | ) | |
| Fitness World, Inc., Jea Jung, and Woo | ) | |
| Jin Jung, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | |
|---|---|
| Scott Hensley, | ) Civil Action No. 3:05-2693-MBS-JRM |
|             Plaintiff, | ) |
| vs. | ) |
| New Life Fitness World of South Carolina, Lexington, Inc., New Life Fitness World of South Carolina South, Ins., New Life Fitness World of South Carolina Northeast, Inc., New Life Fitness World of South Carolina North, Inc., New Life Fitness World of South Carolina, Inc., Jung's Tae Kwon Do Academy, New Life Fitness World, Inc., Jea Jung, and Woo Jin Jung, | ) <br> ) <br> ) **REPORT AND RECOMMENDATION** |
|             Defendants. | ) |

In these cases, plaintiffs allege race discrimination, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and violation of the public policy of South Carolina by their former employers. Apparently not exactly certain who employed them, plaintiffs named several corporations (hereinafter collectively "New Life") and two individuals (Woo Jin Jung and his son, Jea Jung) as defendants. Review of the complaints shows that each plaintiff was an employee of defendants, and they raise similar claims. Luis and Ramona Endara are Hispanic, and Scott Hensley is Caucasian. Each plaintiff alleges claims based on defendants' discrimination against African Americans.

Defendants filed a motion to dismiss all claims on October 26, 2005. Plaintiffs filed opposition memoranda and motions to amend their complaints on November 14, 2005. Defendants filed reply memoranda on November 21, 2005. Plaintiffs allege three specific claims. First, they allege a Title VII claims for "adverse employment actions based on race, creating and maintaining

a racially hostile working environment and retaliation." (Complaints, ¶ 11).  Plaintiffs identify constructive discharge as the adverse employment action in their opposition memoranda.  Second, plaintiffs allege a RICO claim against defendants.  However, they specifically abandon that claim in their opposition memoranda.  Last, plaintiffs allege that the "termination of [their] employment constitutes a violation of the public policy of South Carolina."  Essentially, plaintiffs allege defendants pressured them to discriminate against African-Americans which caused their constructive discharge.

Defendants move to dismiss plaintiffs' first and third claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  Woo Jin Jung and Jea Jung also move to dismiss plaintiffs' first claims because they are not employers as defined by Title VII.

## Standard for Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint or claim for "failure to state a claim upon which relief can be granted."  A District Court should only grant such a motion in limited circumstances.  Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989); Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).  The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the claims, not to resolve disputes of surrounding facts, the merits of the claims, or the applicability of potential defenses.  Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).  The Court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff.  Ibarra v. United States, 120 F.3d 472, 473 (4th Cir. 1997).  The Court should not dismiss a complaint for failure to state a claim "unless after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing

all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." De' Lonta v. Angelone, 330 F.3d 6340, 633 (4th Cir. 2003) (internal quotation marks and citation omitted).

In Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002), the Court held that "an employment discrimination plaintiff need not plead a prima facie case of discrimination" in order to survive a motion to dismiss under Rule 12(b)(6). The Court reasoned that it would be "incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits," as direct evidence of defendant's discriminatory intent might be unearthed during discovery. Id. at 511-12. In a post-Swierkiewicz decision, the Fourth Circuit upheld dismissal of a Title VII claim under Rule 12(b)(6) because plaintiff failed to allege facts sufficient to support all elements of her hostile work environment claim. Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761 (4th Cir.), *cert. denied*, 540 U.S. 940 (2003). The Court stated "(o)ur circuit…has not interpreted Swierkiewicz as removing the burden of a plaintiff to allege facts sufficient to state all elements of her claim." Id. (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002) and Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)).

In Chao v. Rivendell Woods, Inc., 415 F.3d 342 (4th Cir. 2005), the Fourth Circuit reversed a Rule 12(b)(6) dismissal in a Fair Labor Standards Act case and reconciled its earlier holding in Bass. The Court explained that the "complaint in Bass failed because it alleged facts that 'did not seem to have anything to do with gender, race, or age harassment' but merely told 'a story of workplace dispute…and perhaps callous behavior by supervisors.'" Id. at 347-48 quoting Bass at

4

765. Read together, <u>Bass</u> and <u>Choa</u> seem to suggest a review of the complaint's factual allegations in relation to its claims is appropriate in considering a Rule 12(b)(6) motion.

### **Alleged Facts**

The factual allegations of ¶ 9 of the three complaints are similar. The following is a synthesis of those allegations:

1. Plaintiffs were employed at one or more of Defendants' fitness centers;

2. Corporate meetings were conducted on Defendants' premises and elsewhere in 2002 and the early part of 2003, at which time Plaintiffs were informed that Woo Jin Jung, the proprietor of the companies, would not tolerate having other employees as managers of facilities or in prominent public positions, because they were black;

3. Woo Jin Jung stated on numerous occasions that he did not like having black citizens in mid or high level corporate positions, or in prominent public positions, and he has made a pattern and practice over the years of demoting and terminating corporate personnel and especially non-black corporate personnel for hiring, retaining and/or not terminating or reducing the level of employment of blacks;

4. At a time when a Title VII lawsuit based on Woo Jin Jung's racism was believed to be pending against Defendants or one or more of them, Plaintiffs were informed by a corporate official that when that case was resolved that another employee who was black would removed from his position due to his race, i.e., being black;

5. Plaintiffs were informed by corporate officials that Woo Jin Jung often used derogatory terms to describe black citizens, and he was informed that the term was the Korean (Jung is Korean) equivalent for the racial epithet "nigger";

6.  Plaintiffs were informed that other of Defendants' employees had been demoted and had their pay cut for hiring, not firing and/or not reducing the level of employment of black employees;

7.  Plaintiffs were informed that other employees' promotions to managerial positions were to create the appearance of racial impartiality because of a pending Title VII case against the companies.

8.  Woo Jin Jung made numerous racial slurs against blacks in the presence of Luis Endara, Hensley, and other employees.

9.  Hensley was told by Defendants that his employment and pay were going to be reduced or eliminated unless he would provide false evidence and otherwise support Defendants' racially hostile and discriminatory practices.

10. Luis Endara was told by Defendants that his employment and pay were going to be reduced or eliminated as a result of hiring, retaining, and not terminating black employees, and/or unless he would support Defendants' racially hostile and discriminatory practices.

11. Ramona Endara was threatened by Defendants that unless she could stop her husband from suing Defendants relative to civil rights violations, she would be terminated from her employment, have her level of employment reduced and/or otherwise be harmed.

**Discussion**

A. The Jungs

Jea Jung and Woo Jim Jung ("the Jungs") assert that they are entitled to dismissal because they are not "employers" as defined by Title VII.[1]  Title VII specifically defines employers as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year...." 42 U.S.C. § 2000e(b).  The Jungs argue that Title VII does not apply to individuals.  This is, of course, not correct.  What they really mean is that "Title VII does not cover individuals who merely manage, supervise, or control a corporate" employee.  See Lissau v. Southern Food Service, Inc., 159 F.3d 177 (4th Cir. 1998).  Curiously, the Jungs, nor any defendant, identifies exactly who employed plaintiffs.  Based on this record, it is impossible to determine the employer of these plaintiffs.  Discovery is needed on this issue.  The Jungs' motion should be denied.

B. Racially Hostile Work Environment

To prevail on a claim of racially hostile work environment, a plaintiff must show that the harassment was (1) unwelcome, (2) based on his race, (3) sufficiently severe or pervasive to alter the conditions of his employment and create an abusive atmosphere, and (4) that there is some basis for imposing liability on the employer.  Causey v. Balog. 162 F.3d 795, 801 (4th Cir. 1998).  The harassment must be both objectively severe or pervasive.  Harris v. Fork Lift Sys., Inc., 510 U.S. 17, 21 (1993).

---

[1] The Jungs also apply this argument to plaintiffs' claim of violation of the public policy of South Carolina.

Additionally, a hostile work environment claim may not be based on some professional frustration, but on "personal racial attacks." Honor v. Booz-Allen Hamilton, Inc., 383 F.3d 180, 191 (4th Cir. 2004). In Honor, the Fourth Circuit affirmed summary judgment for defendant on a hostile work environment and where plaintiff, an African-American, asserted his white supervisor was biased against African-Americans, sought to derail the careers of other African-Americans, and resisted his attempts to recruit other African-American employees. However, no racially-offensive conduct was directed at plaintiff himself. Id. at 190. Further, it has been held that an employment discrimination plaintiff lacks standing to redress discrimination directed toward others. See Lowers v. Circuit City Stores, Inc., 158 F.3d 742, 761 (4th Cir. 1998) ("An individual plaintiff in a private, non-class action alleging employment discrimination is not litigating common questions of fact, but the discrete question of whether the employer discriminated against the plaintiff in a specific instance"), *vacated on other grounds*, 527 U.S. 1031 (1999).

None of the factual allegations contained in the complaints (as summarized above) involve harassment against these plaintiffs based on their race. It is, therefore, recommended to plaintiffs' claims of being subject to a racially hostile work environment be dismissed.

C.   Constructive Discharge

Although not specifically pled in their complaints, plaintiffs assert in their memoranda that they were constructively discharge. An employee must show that his employer took "deliberate" action to make the employee's working conditions "intolerable" in an effort to force the employee to resign. Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1353-54 (4th Cir. 1995); Amirmokri v. Baltimore Gas and Elec. Co., 60 F.3d 1126, 1132 (4th Cir. 1995); Bristow

8

v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985), cert. denied, 475 U.S. 1082 (1986). Deliberateness exists when the actions of the employer were "intended by the employer as an effort to force the employee to quit." Burns v.AFF-McQuay, Inc., 96 F.3d 728 (4th Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997). Such intent can be inferred from actual or circumstantial evidence. See Holsey v. Armour & Co., 743 F.2d 199, 209 (4th Cir.1984), cert. denied, 470 U.S. 1028 (1985). Deliberateness is also shown if company personnel know of the untenable conditions, and take no steps to remedy the situation. Id. "Intolerable" working conditions are assessed by the objective standard of whether a "reasonable person" in the employee's position would have felt compelled to resign. Burns, 96 F.3d at 733, EEOC v. Clay Printing Co., 955 F.2d 936, 944 (4th Cir. 1992). If the employee meets this burden, he then must show that the conduct about which he complains was motivated by discrimination based on his race. Taylor v. Virginia Union University, 193 F.3d 219 (4th Cir. 1999). Honor, 383 F.3d at 187 (employer's deliberateness must "be motivated by racial bias").

As with plaintiffs' hostile work environment claim, none of the factual allegations of the complaints involve deliberate action by defendants based on the race of plaintiffs. It is, therefore, recommended that plaintiffs' construction discharge claims be dismissed.

D.     Retaliation

Pursuant to 42 U.S.C. § 2000e-3(a)

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

To establish a prima facie case of retaliation, it must be demonstrated that:

>   (1) the employee engaged in protected activity;
>
>   (2) the employer took some adverse employment action against the employee; and
>
>   (3) a causal connection existed between the protected activity and the adverse action.

See Von Gunten v. Maryland, 243 F.3d 858, 863 (4th Cir. 2001); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998); Carter v. Ball, 33 F.3d at 460. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse action. Texas Dep't of Community Affairs v. Burdine, 450 U.S. at 254. If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual, and that his termination was motivated by discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000).

An alleged protected activity may fall within § 2000e-3(a)'s "opposition clause" or its "participation clause." A different analysis is employed dependant upon which clause is implicated. "Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Laughlin v. Metropolitan Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998). To determine whether an employee has engaged in legitimate opposition activity, courts must "balance the purpose of [Title VII] to protect persons engaging reasonably in activities opposing…discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981). "Participation activity encompasses, as outlined in the statute, making a charge, testifying, or participating in a Title VII investigation, proceeding or hearing.

Kubico v. Ogden Logistics Servs., 181 F.3d 544 (4th Cir. 1999). The reasonableness test of the opposition clause analysis is inapplicable to the consideration of a claim under the participation clause. This distinction is based on the broad statutory language ("participated in any manner") with respect to the participation clause. Kubico, 181 F.3d at 551. Further, "(a)ctivities under the participation clause are essential to the machinery set up by Title VII." Laughlin, 149 F.3d at 259 n. 4.

Defendants assert that dismissal should be granted because the complaint is insufficient to show that plaintiffs engaged in a protected activity or that they suffered an adverse employment action. The "protected activity" requirement seems to be sufficiently pled. In ¶ 8 of the complaints, plaintiffs state that "Defendants retaliated against [them] for opposing [their] own wrongful treatment and the wrongful treatment of other of Defendants' employees." However, the only adverse action alleged is constructive discharge. As discussed above, that claim is not sufficiently supported by the allegations of the complaint. For that reason, plaintiffs' retaliation claims also must fail.

  E.  Violation of Public Policy

Plaintiffs assert that their constructive discharge violated the public policy of South Carolina. As discussed above, plaintiffs' Title VII constructive discharge claim fails because no action was taken based on the race of plaintiffs. However, plaintiffs make further allegations that their continued employment was contingent on tacit approval of defendants' illegal activity such as drug sales. Defendants appear to concede that South Carolina law in this area is evolving and that there are no cases specifically on point. For this reason, it is recommended that plaintiffs'

state law claims be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).  See <u>Ketema v. Midwest Stamping, Inc.</u>, 2006 WL 1307943 (4th Cir. 2006) (unpublished).

F.     Motions to Amend

Plaintiffs filed defensive motions to amend their complaints along with their opposition memoranda.  However, they do not attach a copy of a proposed amended complaint or indicate what new facts they would allege to support their claims.  It is, therefore, recommended that the motions to amend be denied.

## Conclusion

Based on the record, it is recommended that plaintiffs' (1) Title VII claims be dismissed with prejudice; (2) motions to amend be denied; and (3) state law claims be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

May 25, 2006
Columbia, South Carolina